UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TRICIA MELERINE STORY | CIVIL ACTION |
| VERSUS | NO. 19-2301 |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED AND BANK OF AMERICA CORPORATION | SECTION "R" (1) |

## **ORDER AND REASONS**

The Court has received the motion to compel arbitration, or in the alternative to dismiss the petition for mandatory injunction and damages and the petition for authority, from defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated and Bank of America Corporation.[1] The Court previously granted the motion to compel arbitration with regard to Merrill Lynch, but requested additional briefing before ruling on the remaining issues.[2] The Court now grants the motion to compel arbitration with regard to Bank of America.

---

[1] R. Doc. 9.
[2] *See* R. Doc. 16.

## I. BACKGROUND

This case arises from the freezing of trust accounts.[3] Michael P. Zauner, the husband of plaintiff Tricia Melerine Story,[4] created a trust to benefit his wife and children.[5] The trust assets include investment accounts with Merrill Lynch, a subsidiary of Bank of America.[6] Zauner died,[7] and his wife was to become the trustee.[8] But Zauner's children objected to Story as trustee.[9] As a result, Merrill Lynch restricted the trust accounts,[10] and did not follow Story's instructions to disburse the account funds.[11]

Story therefore filed two suits in Louisiana, one asking the state court to mandate the distribution of the funds and award damages,[12] and one asking the state court to grant her authority over the accounts.[13] Defendants removed both suits to federal court, leading to the current action.[14]

---

[3] For a more detailed explanation of the background, see R. Doc. 16 at 2-4.
[4] R. Doc. 1-1 at 1 ¶ 3.
[5] *See id.* at 2 ¶ 4, 10 ¶ II(G).
[6] *See id.* at 2 ¶ 9.
[7] *See id.* at 1 ¶ 3.
[8] *See id.* at 2 ¶ 7, 12 ¶ V(A).
[9] *See* R. Doc. 9-5; R. Doc. 9-9.
[10] *See* R. Doc. 9-1 at 2.
[11] *See* R. Doc. 1-1 at 3 ¶ 11.
[12] *See* R. Doc. 1-1.
[13] *See* R. Doc. 1-2.
[14] R. Doc. 1.

Defendants then filed a motion to compel arbitration.[15] The Court granted this motion in part, ordering arbitration with respect to Merrill Lynch.[16] Bank of America, though, had not addressed whether Story had to arbitrate her claims against it, instead arguing that Bank of America is not a proper party to the suit.[17] The Court therefore ordered the parties to brief whether an arbitration agreement exists between Bank of America and Story that would necessitate arbitration of the remaining disputes.[18]

In a separate vein, after defendants filed their motion to compel, the Zauner children settled a suit in which they had attempted to remove Story as a trustee.[19] The Court therefore also ordered the parties to brief whether this settlement meant that a live dispute no longer existed in the current action.[20]

---

[15] R. Doc. 9.
[16] *See* R. Doc. 16 at 24-25.
[17] *See id.* at 21.
[18] *See id.* at 22, 25.
[19] Zauner's children had initiated a lawsuit in Texas to remove Story as a trustee. *See* R. Doc. 9-5 at 2. This suit was settled and voluntarily dismissed. *See* R. Doc. 18 at 1 ¶ 1 (N.D. Tex. Case No. 3:19-cv-00374-L-BN); R. Doc. 19 (N.D. Tex. Case No. 3:19-cv-00374-L-BN). The Zauner children had also objected in Louisiana to Story's petition for probate. *See* R. Doc. 9-9. But in their objections, the Zauner children requested a stay to allow for a resolution of the first-filed Texas suit. *See id.* at 11-12.
[20] *See* R. Doc. 16 at 24-25.

In this additional briefing, Bank of America avers that, following the settlement, Merrill Lynch received a letter of authorization from Story and the Zauner children, which identified Story as trustee and allowed distributions from the account following approval of the respective counsel for Story and the children.[21] And distributions have been made pursuant to plaintiff's instructions.[22] Story nevertheless argues that she still has a live claim against Bank of America.[23] Bank of America, in turn, argues that Story herself has now signed a Client Relationship Agreement containing an arbitration clause,[24] and that she should be compelled to arbitrate any remaining dispute with Bank of America.[25]

The Court now addresses the remaining arguments in defendants' motion to compel arbitration, or in the alternative, to dismiss the suit.[26]

## II. LEGAL STANDARD

To determine whether to compel arbitration, the Court conducts a "two-step inquiry." *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d

---

[21] *See* R. Doc. 17 at 3; R. Doc. 17-1 at 3 ¶ 6, 6 ¶ 3.
[22] *See* R. Doc. 17-1 at 3 ¶¶ 8-9.
[23] *See* R. Doc. 19 at 2-3.
[24] *See* R. Doc. 17-1 at 14-16.
[25] *See* R. Doc. 17 at 4-6.
[26] R. Doc. 9.

4

596, 598 (5th Cir. 2007). "Th[e] Court must first ascertain whether the parties agreed to arbitrate the dispute," which requires "determining . . . '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Id.* (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). As the Federal Arbitration Act ("FAA") expresses a liberal policy in favor of arbitration, *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The Court next considers "whether any federal statute or policy renders the claims nonarbitrable." *JP Morgan Chase & Co.*, 492 F.3d at 598 (quoting *Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004)).

## III. DISCUSSION

The Court previously examined whether an arbitration agreement bound Story and Merrill Lynch.[27] The Court now conducts a similar analysis to determine whether to compel arbitration of any remaining disputes between Story and Bank of America.

---

27  R. Doc. 16.

5

## A. Agreement to Arbitrate: Validity

The first step of the arbitration analysis requires determining whether Story and Bank of America agreed to arbitrate this dispute, which in turn requires first determining whether a valid agreement to arbitrate exists between Story and Bank of America. As discussed in the Court's earlier order,[28] to have a valid agreement to arbitrate, the parties "must generally be [] signator[ies] to a contract containing an arbitration clause." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 353 (5th Cir. 2003).

Here, Bank of America argues—as Merrill Lynch did earlier[29]—that the Merrill Lynch Client Relationship Agreement contains such a clause.[30] In its earlier order, the Court addressed whether this Agreement bound Story as a nonsignatory.[31] But the supplemental briefing indicates that Story has now signed the Agreement.[32] Consequently, the Court no longer needs to consider whether this Agreement binds Story as a nonsignatory.

The Court must still consider, though, whether Bank of America is a signatory to this Agreement. Although the Agreement purports to define a

---

[28] *See* R. Doc. 16 at 8.
[29] *See* R. Doc. 9-1 at 2-3, 7-11.
[30] *See* R. Doc. 17 at 4-5.
[31] *See* R. Doc. 16 at 8-13.
[32] *See* R. Doc. 17-1 at 14-16.

"household's relationship with *Merrill Lynch*,"[33] it also mentions Bank of America. The first page, for example, bears the logo "Merrill Lynch Bank of America Corporation."[34] And the terms and conditions begin:

> For the purpose of this Client Relationship Agreement ("Agreement"), "you" and "your" refers to each person who has agreed to the terms in this Agreement. "Merrill Lynch," "we," "our" and "us" refer to Merrill Lynch, Pierce, Fenner & Smith Incorporated, a registered broker-dealer and a wholly owned subsidiary of Bank of America Corporation. "Account" refers to any securities account you open with Merrill Lynch.[35]

The Agreement also mentions Bank of America elsewhere. For instance, when discussing Merrill Lynch's referral policy, the Agreement states that Merrill Lynch "is an affiliate of Bank of America, N.A. and other subsidiaries of Bank of America Corporation (collectively, 'Merrill Lynch')."[36]

But while this Agreement does name Bank of America, the Court does not find that the terms establish Bank of America as a signatory. Rather, the references to Bank of America merely identify Bank of America Corporation as the parent company of Merrill Lynch, and other subsidiaries of Bank of America as affiliates of Merrill Lynch. The Court therefore considers

---

33    *See* R. Doc. 17-1 at 12.
34    *Id.*
35    *Id.* at 18.
36    *Id.* at 21.

whether Bank of America Corporation, as a nonsignatory, can validly use the Agreement to compel arbitration.

The Court's prior order addressed a related question. There, the Court found that Merrill Lynch, a signatory to the Agreement, could bind Story, a nonsignatory.[37] The Court now considers the reverse question: whether Bank of America, a nonsignatory to the Agreement, can bind Story, a signatory.

"[S]tate law controls whether an arbitration clause can apply to nonsignatories." *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 336 (5th Cir. 2010); *see also Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 529-32 (5th Cir. 2019) (looking to Texas law to determine whether a nonsignatory can enforce an arbitration clause); 1 Thomas H. Oehmke, *Commercial Arbitration* § 7:1 (Dec. 2019 update) ("While the FAA 'creates substantive federal law regarding the enforceability of arbitration agreements, . . . background principles of state contract law' control the interpretation of the scope of such agreements 'including the question of who is bound by them.'" (alteration in original) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009))).

---

[37] *See* R. Doc. 16 at 10-13.

The defendants removed the plaintiff's action from state court to this Court on the basis of 28 U.S.C. § 1332 diversity jurisdiction.[38] A federal court sitting in diversity applies the choice of law rules of the state in which it resides. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The Court therefore applies Louisiana law.

Louisiana generally accepts parties' contractual choice of law. *See* La. Civ. Code art. 3540 ("All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537 [providing the "[g]eneral rule" for choice of law in matters of conventional obligation]."); *see also Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, No. 08-1195, 2011 WL 1226464, at *5 (E.D. La. Mar. 28, 2011) ("In Louisiana, choice-of-law clauses in contracts are given effect unless there is law or strong public policy justifying the refusal to enforce the contract as written." (citing *Prescott v. Northlake Christian Sch.*, 369 F.3d 491, 496 (5th Cir. 2004)).

"Moreover, Louisiana courts have held that the validity of an arbitration agreement is determined by the law selected in the agreement itself." *Id.* (citing *Bolden v. FedEx Ground Package Sys., Inc.*, 60 So. 3d 679,

---

[38] *See* R. Doc. 1 at 1, 2-3 ¶¶ 9-10.

9

684-85 (La. App. 4 Cir. Feb. 16, 2011)). Here, the Agreement chooses New York law,[39] which the Court follows.

In determining whether a nonsignatory to an agreement can compel a signatory to arbitrate, New York law largely mirrors federal law. *See Gov't Emps. Ins. Co. v. Grand Med. Supply, Inc.*, No. 11 Civ. 5339 (BMC), 2012 WL 2577577, at *3 (E.D.N.Y. July 4, 2012). And federal law has recognized multiple theories for applying arbitration agreements to nonsignatories. *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *see also Arthur Andersen*, 556 U.S. at 631 ("'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" (quoting 21 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 57:19 (4th ed. 2001)).

Bank of America specifically argues that the theory of estoppel applies here.[40] Indeed, New York courts have previously applied this theory to arbitration. *See Belzberg v. Verus Invs. Holdings Inc.*, 999 N.E.2d 1130, 1133 (2013) (noting that "New York courts have relied on the direct benefits

---

39  *See* R. Doc. 17-1 at 19.
40  *See* R. Doc. 17 at 5-6.

10

estoppel theory, derived from federal case law, to abrogate the general rule against binding nonsignatories").

Estoppel, though, takes multiple forms. *See Hoffman v. Finger Lakes Instrumentation, LLC*, 789 N.Y.S.2d 410, 414 (N.Y. Sup. Ct. 2005). As applicable here, this theory permits a court to "estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* at 415 (quoting *Thomson-CSF*, 64 F.3d at 779). Or, explained in the context of a nonsignatory parent company, "[i]n essence, a non-signatory voluntarily pierces its own veil to arbitrate claims against a signatory that are derivative of its corporate-subsidiary's claims against the same signatory." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201 (3d Cir. 2001).

This form of estoppel applies if one of two conditions is met. A nonsignatory can compel arbitration "when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Hoffman*, 789 N.Y.S.2d at 415 (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th

Cir. 2000)). Or a nonsignatory can compel arbitration "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Hoffman*, 789 N.Y.S.2d at 415 (quoting, *Grigson*, 210 F.3d at 527).

Here, Story's claims require arbitration under either condition. First, Story raises allegations of substantially interdependent and concerted misconduct against both Bank of America, a nonsignatory, and Merrill Lynch, a signatory. Plaintiff's pleading, for instance, refers to a dispute regarding "certain investment accounts managed by 'Merrill Lynch Bank of America Corporation.'"[41] Plaintiff specifically states she "has issued numerous directives and instructions to Merrill Lynch Pierce Fenner & Smith Inc. and Bank of America Corporation concerning the distribution of the funds held in the name of the Zauner Trust,"[42] but "Merrill Lynch Pierce Fenner & Smith Inc. and Bank of America Corporation have failed and refused to follow [plaintiff's] instructions and have unlawfully withheld the trust funds."[43] In her pleadings, in other words, plaintiff speaks of Merrill

---

[41] R. Doc. 1-1 at 2 ¶ 9.
[42] *Id.* at 3 ¶ 10.
[43] *Id.* at 3 ¶ 11.

12

Lynch and Bank of America in the same breath. Indeed, she accuses them not just of interdependent conduct, but of the same conduct.

Second, Story's claims hinge on the Client Relationship Agreement. Under this Agreement, Story received "access to a range of Accounts,"[44] and it was the denial of this access which instigated her suit.[45] Consequently, her claims presume the existence of and directly relate to this Agreement. Additionally, the Court can identify no reason why arbitration in this scenario is not appropriate.

The conclusion that Bank of America can require Story to arbitrate accords with the approach of various other courts. Specifically, Story sues Bank of America Corporation, which is merely a "bank holding company." *United States v. Griffin*, 800 F.3d 198, 201 n.4 (5th Cir. 2015). And "a series of cases" have required "signatories . . . to arbitrate related claims against parent companies who were not signatories to the arbitration clause." *E.I. DuPont*, 269 F.3d at 201; *see id.* (collecting cases).

Furthermore, this conclusion prevents an otherwise perverse result. A contrary outcome would allow a plaintiff to circumvent an arbitration clause by suing a parent company whenever a dispute arose with a subsidiary. "If

---

[44] R. Doc. 17-1 at 18.
[45] *See* R. Doc. 1-1 at 3-4 ¶ 15.

13

this Court were to allow [a plaintiff] to prevent the arbitration of these issues by the naming of [a parent company] as a party to this action, the Federal policy in favor of arbitration would be thwarted." *Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F. Supp. 1146, 1151 (S.D.N.Y.), *aff'd*, 486 F.2d 1394 (2d Cir. 1973); *see also Hilti, Inc. v. Oldach*, 392 F.2d 368, 369 n.2 (1st Cir. 1968). Additionally, requiring a parent company to litigate a suit in federal court while its subsidiary defended the same claims before an arbitrator would prove an inefficient use of judicial resources.

In sum, therefore, the Court finds that even though Bank of America is not a signatory to the Agreement, Bank of America can validly seek to enforce the Agreement against Story under a theory of estoppel.

### B. Agreement to Arbitrate: Scope

Having found that the arbitration agreement binds Story and Bank of America, the Court must next determine—in order to complete the first step of its inquiry—whether the Agreement encompasses the current dispute within its scope.

In its prior order, the Court found that the dispute with Merrill Lynch fell within the compass of the arbitration agreement.[46] Though Story has

---

[46] *See* R. Doc. 16 at 13-16 (finding that the plain language of the arbitration clause was broad enough to cover nearly any dispute, including the current controversy about the freezing of accounts).

now signed a new Client Relationship Agreement herself, the operative language remains the same as that signed by her predecessor trustee.[47] Given this overlap, the Court will not repeat the full analysis from its prior Order. The controversy the Court previously considered remains the same, so the Court likewise finds that the dispute with Bank of America falls within the scope of the arbitration agreement.

## C. Non-Arbitrability

The second part of the Court's inquiry requires determining whether federal statute or policy prevents arbitration between Story and Bank of America. As in its prior order, the Court has not identified any such authority that would render this claim non-arbitrable.[48] Overall, therefore, the Court finds that Bank of America has met the requirements for the Court to order arbitration.

---

[47] *Compare* R. Doc. 9-3 at 10 ¶ 4, *with* R. Doc. 17-1 at 19. That Story signed the Agreement after the initiation of the current suit is not of consequence, as the clause expressly applies to "all controversies . . . whether . . . occurring prior, on or subsequent to the date" of the Agreement. *See* R. Doc. 17-1 at 19.

[48] *See* R. Doc. 16 at 16-17 (noting that other courts have compelled arbitration based on agreements with Merrill Lynch, and not identifying a reason to require otherwise in the current case).

D. **Story's Defenses**

In its prior order, the Court determined that Story's status as a beneficiary and her claims of waiver did not preclude arbitration with Merrill Lynch.[49] The Court can discern no reason why these same defenses would prevent arbitration against Merrill Lynch but not Bank of America.

E. **Mootness**

The Court asked the parties to indicate whether, following the settlement of a related suit,[50] the current dispute remains live.[51] Story continues to maintain a claim for damages against Bank of America,[52] whereas Bank of America argues that the claims are now moot.[53] The Court finds that the question of mootness is one for the arbitrator.

---

[49] *See* R. Doc. 16 at 17-19 (finding that, especially as the trust beneficiaries' benefits from the Agreement were not indirect, New York law bound them to the Agreement, and that the language of the contracts at issue also evidenced an intent to bind the beneficiaries); *id.* at 19-22 (finding that a statement from a Merrill Lynch manager suggesting that the accounts would remain frozen absent a court order or resolution from the parties was not clearly inconsistent with arbitration, nor had other actions shown an acceptance of litigation).

[50] *See* R. Doc. 18 at 1 ¶ 1 (N.D. Tex. Case No. 3:19-cv-00374-L-BN); R. Doc. 19 (N.D. Tex. Case No. 3:19-cv-00374-L-BN).

[51] *See* R. Doc. 16 at 22-24.

[52] *See* R. Doc. 19 at 2.

[53] *See* R. Doc. 17 at 2-4.

Here, as discussed above and in the Court's prior order, the Court finds that the scope of the arbitration agreement is broad.[54] And "the Supreme Court has held that when faced with a broad arbitration clause, . . . 'only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Oil, Chem. & Atomic Workers Int'l Union Local 5-391 v. Conoco, Inc.*, 64 F. App'x 178, 184 (10th Cir. 2003) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Consequently, in the absence of "evidence to suggest that the parties intended, in agreeing to send nearly all grievances to arbitration, that the question of whether those grievances were moot should not also be sent to arbitration," then "the issue of mootness is also a question for the arbitrator." *Id*. at 184-85. Because the Court finds that the controversy falls within the scope of a valid arbitration agreement, therefore, the Court also finds that the question of mootness is one for the arbitrator.

---

[54] *See* R. Doc. 16 at 16.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Bank of America's motion to compel arbitration.

New Orleans, Louisiana, this __13th__ day of December, 2019.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE